Robert SIMPSON, Plaintiff–Appellant,

v.

Tim ROWAN, et al., Defendants–
Appellees.

No. 93–3250.

United States Court of Appeals,
Seventh Circuit.

Argued July 6, 1995.

Decided Dec. 29, 1995.

Jerold S. Solovy, Richard P. Steinken, Christopher C. Dickinson (argued), Jenner & Block, Chicago, IL, for Robert Simpson.

Jeffrey D. Greenspan, Michael W. Tootooian, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for Alexander Dimare, Sergeant DiCarlo.

James J. Jozefowicz (argued), Office of the State's Attorney of Cook County, Chicago, IL, Terry L. McDonald, Jeremy C. Schwartz, Office of the State's Attorney of Cook Coun-

ty, Federal Litigation Division, Chicago, IL, for Mary D. Mallo, Ken Goff, Mike Baumel.

Charles E. Hervas, James G. Sotos, Michael W. Condon (argued), Michael D. Bersani, Hervas, Sotos & Condon, Itasca, IL, for D. Shilling, Joyce Thillman, Mark Alvarado, Rich Sommer, Martin O'Connell, Pete Satriano.

Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Robert Simpson, an Illinois prisoner whose conviction for felony murder is on appeal before the state supreme court, appeals from the dismissal of his 42 U.S.C. § 1983 damage action against several police officers and assistant state's attorneys. Simpson alleged that he was falsely arrested, that his apartment was improperly searched without a warrant, and that defendants conspired to deprive him of various constitutional rights. The principal issue on appeal is whether the district court properly dismissed Simpson's action on the basis of *Younger* abstention. We hold that *Younger* does apply, but that the district court should have stayed rather than dismissed those claims that are not foreclosed by the Supreme Court's recent decision in *Heck v. Humphrey*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Heck* bars Simpson's claims that do not allege violations under the Fourth Amendment.

## BACKGROUND

In May 1992, Simpson was arrested in connection with the robbery of a grocery store and the shooting death of one of its patrons. He was charged with felony murder. While awaiting trial in the Circuit Court of Cook County, Simpson filed an eleven-count, civil rights complaint in February 1993 against several Riverdale and Glenwood police officers, as well as certain assistant state's attorneys. Simpson's *pro se* com-

1. No transcripts or briefs from Simpson's criminal trial or appeal have been filed with this court.

2. Subsequently, on November 1, 1994, Simpson filed a 73–page petition for postconviction relief in the Circuit Court of Cook County, renewing

plaint essentially alleged that he was falsely arrested on the felony murder charge and that his apartment was wrongfully searched without a warrant in violation of his Fourth Amendment rights. Simpson also charged defendants with malicious prosecution and conspiracy to obstruct justice, deprive him of his right to equal protection, and deny him his right to counsel. Simpson did not, however, seek injunctive or declaratory relief; rather, he sought $6.1 million in compensatory and punitive damages based on defendants' alleged violation of his constitutional rights.

In June 1993, Simpson was convicted in the Circuit Court of Cook County of felony murder. He was sentenced to death.[1]

In August 1993, the district court abstained from granting any relief under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), holding that the issues raised in Simpson's § 1983 action "will necessarily involve the very issues to be considered on appeal in the state court proceeding." *Simpson v. Rowan*, No. 93 C 534, 1993 WL 311783, at *1 (N.D.Ill. Aug. 12, 1993). Rather than staying the case, however, the district court dismissed the action in its entirety. In January 1994, Simpson appealed the district court's judgment.[2]

## DISCUSSION

### I. *Heck v. Humphrey*

Simpson's suit to recover damages attributable to an allegedly unconstitutional conspiracy, search, and arrest implicates issues recently addressed in *Heck v. Humphrey*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), decided during the pendency of this appeal. In *Heck*, the § 1983 plaintiff sued county prosecutors and a state police investigator for engaging in unlawful acts in an effort to secure the plaintiff's state court conviction. *Id.* at ——, 114 S.Ct. at 2368. Affirming the dismissal of the plaintiff's action, the Court held that

his allegations that the police made a warrantless arrest and search of his apartment, that he was denied the effective assistance of trial counsel, and that defendants obstructed justice.

when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at ——, 114 S.Ct. at 2372. The Court added that because of doctrines like independent source, inevitable discovery, and harmless error, a successful § 1983 action challenging the legality of a search "would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* at n. 7.

Simpson contends that *Heck* does not bar his federal suit because his unlawful search and arrest claims[3] do not challenge his outstanding conviction or sentence. He acknowledges that these claims are "connected with" and "related to" his arrest and conviction on the felony murder charge, but contends that *Heck* requires "much more ... before claims may be dismissed." We agree.

■ Simpson's claims relating to an illegal search and an improper arrest are not barred by *Heck* because neither claim, if successful, would *necessarily* undermine the validity of his conviction for felony murder. *Perez v. Sifel,* 57 F.3d 503, 505 (7th Cir. 1995) (citing *Heck,* —— U.S. at —— n. 7, 114 S.Ct. at 2372 n. 7 and *Smith v. Springer,* 859 F.2d 31 (7th Cir.1988)); *see also Mackey v. Dickson,* 47 F.3d 744, 746 (5th

Cir.1995) ("It is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."); *but cf. Schilling v. White,* 58 F.3d 1081, 1086 (6th Cir.1995) ("The fact that a Fourth Amendment violation may not necessarily cause an illegal conviction does not lessen the requirement [under *Heck* ] that a plaintiff show that a conviction was invalid as an element of constitutional injury."). Simpson does not challenge his conviction or his sentence. Because an illegal search or arrest may be followed by a valid conviction, a conviction generally need not be set aside in order for a plaintiff to pursue a § 1983 claim under the Fourth Amendment. *See Haring v. Prosise,* 462 U.S. 306, 322, 103 S.Ct. 2368, 2377, 76 L.Ed.2d 595 (1983). *Heck* does not preclude Simpson from raising Fourth Amendment claims in his federal action. Until the ongoing criminal case has run its course, it will be difficult to ascertain the relationship, if any, that exists between the two cases.

■ We note that Simpson's complaint lumped many of his constitutional claims together—the same alleged conspiracy, for instance, led to his malicious prosecution, the deprivation of his equal protection rights, the denial of his right to counsel, and obstruction of justice. Unlike Simpson's Fourth Amendment claims, these constitutional claims, if proven, would necessarily invalidate Simpson's conviction. Because Simpson has not yet successfully challenged his conviction, these claims are barred by *Heck* and should be dismissed without prejudice.[4]

## II. *Younger Abstention*

Having concluded that Simpson's Fourth Amendment claims survive *Heck,* we next

---

3. For convenience, we use the term "Fourth Amendment claims" to refer jointly to Simpson's unlawful search and arrest claims.

4. Simpson also urges that his allegations of malicious prosecution survive *Heck* because they are based on his allegedly unlawful arrest, and not his conviction for felony murder. Like claims for false arrest, he points out, claims for malicious prosecution implicate rights protected under the Fourth Amendment. *See Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994); *Smart v. Board of Trustees*

*of Univ. of Illinois,* 34 F.3d 432, 434 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995). Under *Heck,* however, a federal plaintiff who pursues a malicious prosecution claim must first establish that the underlying criminal proceeding has terminated in his or her favor. *Heck v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994); *Curtis v. Bembenek,* 48 F.3d 281, 286 (7th Cir.1995). Simpson has failed to do so here. His malicious prosecutions claims are therefore foreclosed by *Heck.*

turn to Simpson's argument that the district court improperly decided to abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Simpson challenges that decision on the ground that his § 1983 action sought monetary damages for injury caused by an illegal arrest and search—claims which he asserts "in no way" impeach the validity of his conviction for felony murder. Because adjudication of his Fourth Amendment claims would not invalidate his conviction, Simpson argues, the district court need not have abstained to avoid "interference" with the state court.

■ We review *de novo* a district court's decision to abstain under *Younger. Trust & Inv. Advisers, Inc. v. Hogsett,* 43 F.3d 290, 293–94 (7th Cir.1994); *but cf. Storment v. O'Malley,* 938 F.2d 86, 88 (7th Cir.1991) (applying abuse of discretion standard). In addition, we liberally construe Simpson's *pro se* complaint, which he filed before counsel was appointed. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Wright v. Tackett,* 39 F.3d 155, 157 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995).

In *Younger,* the Supreme Court held that absent extraordinary circumstances federal courts should abstain from enjoining ongoing state criminal proceedings. 401 U.S. at 53, 91 S.Ct. at 754. That holding rested partly on traditional principles of equity, but was based primarily on the "even more vital consideration" of comity. *Id.* at 44, 91 S.Ct. at 750. Comity refers to "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* The Court has extended the holding in *Younger* to cases in which the relief requested was something other than an injunction in state court. *See, e.g., Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (abstention appropriate when relief sought is a declaratory judgment, which would have same disruptive effect on state proceedings as an injunction).

■ One of the primary issues in the present case is whether the *Younger* doctrine can properly be extended to this type of suit. Neither the Supreme Court nor this court has yet to reach the issue of whether *Younger* abstention applies when the relief sought in federal court is damages for misconduct in an underlying criminal case. *Deakins v. Monaghan,* 484 U.S. 193, 202 n. 6, 108 S.Ct. 523, 529 n. 6, 98 L.Ed.2d 529 (1988); *Juidice v. Vail,* 430 U.S. 327, 339 n. 16, 97 S.Ct. 1211, 1219 n. 16, 51 L.Ed.2d 376 (1977).[5] Although the circuits are divided, a plurality now applies *Younger* in some fashion to damage claims similar to those brought by Simpson.[6]

---

5. The Seventh Circuit has touched upon the application of *Younger* to a federal damage claim in at least one case. In *Jacobson v. Village of Northbrook Mun. Corp.,* 824 F.2d 567 (7th Cir. 1987), we focused on the *Younger* problems that arise when parking tickets are contested in a § 1983 action. In that case, the defendant in a state prosecution for unpaid traffic fines sought to enjoin enforcement of a village vehicle sticker ordinance which he deemed unconstitutional. We abstained under *Younger,* noting that any ruling by the federal court concerning the village ordinance would "seriously interfere" with the pending enforcement action in state court. Additionally, we observed, the state court did provide an adequate forum to allow the damages claim to be litigated. *Id.* at 569. By contrast, the state criminal proceedings in the present case afford Simpson no opportunity to have his claims for monetary relief redressed.

6. The First, Fourth, Eighth, Tenth, and Eleventh Circuits have abstained under *Younger* where

consideration of § 1983 damage actions would have a substantially disruptive effect upon ongoing state criminal proceedings. *See Kyricopoulos v. Town of Orleans,* 967 F.2d 14, 15 n. 1 (1st Cir.1992); *Traverso v. Penn,* 874 F.2d 209, 213 (4th Cir.1989); *Doby v. Strength,* 758 F.2d 1405, 1406 (11th Cir.1985) (per curiam); *Parkhurst v. Wyoming,* 641 F.2d 775, 777 (10th Cir.1981); *Landrigan v. Warwick,* 628 F.2d 736, 743 (1st Cir.1980); *McCurry v. Allen,* 606 F.2d 795, 799 (8th Cir.1979), *rev'd on other grounds,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Guerro v. Mulhearn,* 498 F.2d 1249, 1253–54 (1st Cir. 1974).

The Fifth Circuit unequivocally holds that *Younger* has no applicability to a claim for damages. *Alexander v. Ieyoub,* 62 F.3d 709, 713 n. 22 (5th Cir.1995); *Lewis v. Beddingfield,* 20 F.3d 123 (5th Cir.1994); *Ballard v. Wilson,* 856 F.2d 1568, 1571–72 (5th Cir.1988).

The Second, Third, Sixth, and Ninth Circuits have taken more ambiguous positions on the issue. *Giulini v. Blessing,* 654 F.2d 189, 193 (2d

In the present case, Simpson seeks damages for injuries allegedly caused by the warrantless search of his apartment and his unlawful arrest—claims which may also be involved in the underlying state court criminal prosecution. Because an appeal of Simpson's conviction and death penalty sentence is currently pending before the Illinois Supreme Court,[7] the potential for federal-state friction is obvious. The district court avoided that friction by abstaining from deciding Simpson's claims until the Illinois Supreme Court has had a full opportunity to review the circumstances surrounding Simpson's conviction.

Simpson argues that his federal action does not implicate the comity concerns of *Younger* because a federal award of damages would not have any preclusive effect on Simpson's state court criminal trial, which has already concluded. Even though the state trial has ended, however, Simpson's federal damage action raises constitutional issues that are potentially subject to adjudication in his appeal to the state supreme court. For instance, were Simpson to prevail on his federal damages action before the conclusion of the state supreme court proceedings, the resulting federal judgment might undermine the supreme court's consideration of Simpson's constitutional defenses

to his criminal conviction. The policy against federal interference with pending state proceedings would thus be frustrated as much by a damages award as it would by either an injunction or a declaratory judgment. *Younger* abstention is therefore appropriate while the case works its way through the state appellate process. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 369, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989) ("[f]or *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system"); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial."); *see also Warmus v. Melahn,* 62 F.3d 252, 257 (8th Cir. 1995); *Kyricopoulos v. Town of Orleans,* 967 F.2d 14, 15 n. 1 (1st Cir.1992); *Parkhurst v. Wyoming,* 641 F.2d 775, 777 (10th Cir.1981).

■ We disagree, however, with the district court's decision to dismiss, rather than stay, Simpson's federal case. Simpson's civil rights claims seek monetary damages—relief that is unavailable from his pending state proceedings.[8] In *Deakins,* the Supreme

---

Cir.1981) (while federal court should not dismiss damage claims on *Younger* principles alone, it is free to stay proceedings pending decision by state court); *Williams v. Hepting,* 844 F.2d 138, 144–45 (3d Cir.) (district court must stay rather than dismiss claims when monetary relief is not available from ongoing state proceedings), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988); *Monaghan v. Deakins,* 798 F.2d 632, 635 (3d Cir.1986) (same), *aff'd in relevant part,* 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *Schilling v. White,* 58 F.3d 1081, 1084, n. 3 (6th Cir.1995) (relevant inquiry for *Younger* analysis is the "nature and degree of the state's interest in its judicial proceedings, rather than whether a party is seeking injunctive relief or monetary damages"); *Feaster v. Miksch,* 846 F.2d 21, 23–24 (6th Cir.) ("when disposition of a federal action for damages necessarily requires the resolution of issues that will determine the outcome of pending state criminal proceedings, *Younger* requires that the federal action not proceed"), *cert. denied,* 488 U.S. 857, 109 S.Ct. 148, 102 L.Ed.2d 120 (1988), *quoted in Brindley v. McCullen,* 61 F.3d 507, 509 n. 2 (6th Cir.1995); *compare Mann v. Jett,* 781 F.2d 1448, 1449 (9th Cir.1986) (per curiam) (abstention appropriate

where federal plaintiff could adequately litigate his claim of unconstitutional deprivation of counsel in the ongoing state criminal proceedings) *with Lebbos v. Judges of Superior Court, Santa Clara County,* 883 F.2d 810, 816 (9th Cir.1989) (abstention inapplicable where consideration of federal plaintiff's constitutional claims would not interfere with state court garnishment proceedings).

7. In Illinois criminal proceedings involving the imposition of a death sentence, appeals to the Illinois Supreme Court are automatically perfected as a matter of right. *See* Ill.S.Ct.R. 603 & 606.

8. The assistant state's attorney defendants cite this court's recent decision in *Nelson v. Murphy,* 44 F.3d 497, 502 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 671, 133 L.Ed.2d 521 (1996), to suggest that Simpson's failure to present his damage claim to the state trial court now bars him from bringing this federal suit. In *Nelson,* plaintiffs, two inmates confined in a mental institution following verdicts of not guilty by reason of insanity, brought an action under § 1983 chal-

Court determined that when *Younger* abstention is required, "the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." 484 U.S. at 202, 108 S.Ct. at 529; *see also Nelson v. Murphy*, 44 F.3d 497, 503 (7th Cir.) ("[W]hen *Younger* requires equitable arguments to be presented to state courts, claims for monetary relief also are stayed—but should not be dismissed outright if the claims for damages cannot be redressed in the state proceeding."), *cert. denied*, —— U.S. ——, 116 S.Ct. 671, 133 L.Ed.2d 521 (1996). A stay allows the state case to go forward "without interference from its federal sibling, while enforcing the duty of federal courts 'to assume jurisdiction where jurisdiction properly exists.'" *Deakins*, 484 U.S. at 202–03, 108 S.Ct. at 530 (citations omitted). The practical effect of the district court's dismissal is that Simpson is now time-barred from bringing his federal civil rights suit; his claims became barred when the applicable two-year statute of limitations period expired on May 25, 1994. *See id.* at 203 n. 7, 108 S.Ct. at 530. As conceded by the Riverdale defendants, the district court should have retained jurisdiction over Simpson's § 1983 claims pending the outcome of the state proceedings.

### CONCLUSION

The judgment of the district court dismissing the cause is VACATED, and the action is REMANDED to the district court with instructions to stay Simpson's Fourth Amendment claims for monetary damages until the conclusion of the pending state criminal proceedings, including any relevant state collateral review proceedings. The district court is

also directed to dismiss Simpson's *Heck*-barred claims without prejudice.

CUDAHY, Circuit Judge, concurring:

This case and other recent litigation in this circuit involving *Younger v. Harris*, (e.g., *Nelson v. Murphy*, 44 F.3d 497 (7th Cir. 1955)) seem to be pressing against the outer limits of the *Younger* doctrine. In *Nelson*, we said that "[*Younger*] applies to plaintiffs' claim for damages only if the state forum could have entertained a request for damages." 44 F.3d at 505. In the present case, we are moving beyond that limitation. See op. at 138–39, n. 8. Perhaps this is a function of the effort to bring some sort of order out of the proliferation of lawsuits that has taken place almost everywhere.

In the present case, we are really addressing a potential for parallel proceedings and giving priority to the state criminal case. The possibility of preclusion of determinations in the state forum seems to be the underlying concern. But we have ordered only postponement of the damages case—recognizing that it is wholly different in character from the state proceeding. This result serves important considerations of comity and of orderly procedure and may be sustained on those bases. The character of the problems we address here, however, seems to me to have taken us a long way both in theory and in practice, from a federal injunction against a state criminal prosecution—the original concern of *Younger*.

---

lenging the conditions of their confinement. Although both plaintiffs had been active litigants in state court concerning their treatment plans, they had since been released and no longer had a state forum in which they could litigate their federal defenses. We dismissed the complaint on the basis of *Younger*. Because the circuit courts of Illinois were empowered to award both equitable and monetary relief, "*Younger* obliged plaintiffs to make all of their arguments there.... Their deliberate bypass of the opportunity to litigate in state court forecloses them from litigating in federal court." *Id.* at 502–03.

*Nelson* is distinguishable, however, because plaintiffs in that case could have had their claims for damages redressed in state court proceedings. By contrast, Simpson had no opportunity, as best as we can tell, to pursue his request for monetary relief at his state murder trial. Defendants conceded at oral argument that Simpson has no means of obtaining money damages in his criminal proceedings. Accordingly, we conclude that Simpson was not obligated to make all of his arguments in the circuit court.